FRANK PERRET and another *v.* KEILL and another.

A compromise regulates only such matters as it clearly appears that the parties intended it should embrace, and the necessary consequences thereof.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

*Benjamin* and *Lockett,* for the plaintiffs.

*Eustis,* for the appellants.

MORPHY, J. The petitioners represent that in the month of March, 1837, they entered into an agreement with one Edmond Courant, acting for Keill & Courant, a commercial partnership established at Liverpool, in Great Britain, and for François Courant & Co., a commercial partnership established at Havre, in France, for the shipment to Europe of a certain quantity of cotton, to be sold for the joint account, in equal shares, of the petitioners, Keill & Courant, and the said François Courant & Co.; and that by the said agreement the cotton was to be purchased with the proceeds of bills of exchange, to be drawn by petitioners on the said Keill & Courant, and François Courant & Co., and to be by them accepted and paid.

The petitioners further show, that in pursuance of said agreement cotton was purchased, and bills of exchange were drawn by them on said Keill & Courant, and François Courant & Co., for the price of said cotton, but that the said bills were not accepted by the drawees, but on the contrary were dishonored and returned to New Orleans, where petitioners, as drawers, were obliged to take them up at a heavy advance on the original amount, for exchange, costs, charges, &c.

The petitioners further show, that F. Courant & Co. subsequently assigned to the defendants their interest in the adventure, so that they and the defendants remained alone interested therein, in the proportion of one-third for petitioners, and two-thirds for the said Keill & Courant.

The petitioners further aver, that various disputes and difficulties having arisen in the settlement of said joint adventure, an agreement was finally entered into between the parties at Havre, on the 18th of October, 1837, that all the clauses and conditions in the agreement of March, 1837, had been fully complied with, and the part-

nership existing between the said Keill & Courant and them for the purchase of said cotton had been finally closed and liquidated, with the following exception, to wit.: that Keill & Courant had not paid and had refused to credit them with the two-thirds of the loss on the returned bills of exchange, which had been drawn on the partnership account, and consequently should be charged to the partnership ; that the loss on the returned bills of exchange amounted to nine thousand seven hundred and forty-four dollars and 58 cents, two thirds whereof, to wit. $6496 39, are due to the petitioners, and for which they pray judgment against the said Keill & Courant. The attorney appointed to represent the defendants, denied all the allegations of the petition, except that of their interest in the cotton shipments, and the agreement entered into at Havre, which he avers has been fulfilled by Keill & Courant. The settlement of the amount due to the plaintiffs, having been left open for further proof, by agreement of counsel, the court below decided, that in the settlement to be made between the parties, the plaintiffs should be credited with two-thirds of such sum as shall be found to be the amount of the loss on the bills returned ; and from this judgment the defendants have appealed.

The only difficulty in this case turns on the proper construction to be given to the compromise entered into between the parties on the 18th of October, 1837. It is urged by the appellants' counsel, that all the matters concerning the cotton adventure on joint account were embraced by and finally settled in this compromise ; and that Keill & Courant are thereby exonerated from any claim whatsoever on the part of the plaintiffs. The latter, on the other hand, contend that the main object of the agreement was to relieve Keill & Courant from the damages,for which they would otherwise have been liable as drawees, for having suffered bills drawn on them by express agreement to return protested ; but that it was never intended to discharge them as partners in the adventure from the obligation of bearing their proportion of the loss on these returned bills, which had been drawn by plaintiffs for account of the partnership. As sustaining their view or construction of the compromise, the appellants rely chiefly on the second and fifth articles of that instrument. The former acknowledges the right of Keill & Courant to let the drafts return under protest, and regulates at what rates of exchange

Perret and another *v.* Keill and another.

certain sums due by the defendants to the plaintiffs in pounds ster-
ling, and by the plaintiffs to François Courant & Co. in dollars,
shall be admitted in compensation on the settlement of their ac-
counts.   The other article provides for the removal of all attach-
ments laid by the plaintiffs on funds belonging to Keill & Courant,
in New Orleans, and stipulates that the plaintiffs shall levy no other
attachments on account of the business done between them, which
is to be considered as finally settled by the agreement.   These ar-
ticles, notwithstanding the language used in the latter of them, do
not appear to us inconsistent with the construction contended for by
the appellees.   It is clear that, but for this compromise, the plain-
tiffs might well have refused to bear their proportion of the loss re-
sulting from defendants' breach of their contract, in refusing to ac-
cept the bills, and might have insisted that the whole amount of it
should be borne by them.   Their refusal to accept the bills, and the
repudiation of the original agreement which such refusal seemed to
imply, had led the plaintiffs to bring the suit reported in 15 La. 210,
and to attach divers funds belonging to the defendants.   The com-
promise took place pending these attachments, and probably with a
view to remove them.   From the whole context of the instrument
we are satisfied, that the individual liability of the defendants to the
plaintiffs for their refusal to accept the bills drawn for the cotton,
was the main difficulty intended to be obviated.   The unprecedented
embarrassments and derangement of trade in the spring of 1837, no
doubt induced the plaintiffs not to insist rigorously upon their rights,
and justified in their opinion, to a certain extent, the course pursued
by Keill & Courant.   But the acknowledgment, which the plaintiffs
made of the right of the latter to suffer the bills to return protested,
was never intended or understood as affecting or questioning in any
way their own right to make the shipments on joint account, and to
draw against them on the two firms in Liverpool and Havre.   It
would be then most unreasonable to infer from it, that they intended
not only to exonerate Keill & Courant from all direct and individual
responsibility to them, but also to free them from all contribution to
the partnership loss incident to the return of the bills, and to assume
the whole amount of this loss upon their own shoulders.   As the
compromise exhibits no consideration whatever for such an onerous
undertaking on the part of Perret & Gally, it would in fact amount

to a donation, and *nemo facile donare videtur.* It is a well settled rule, that compromises regulate only such matters as appear clearly to be embraced in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is therein expressed. Civ. Code, art. 3040. Far from there being any express mention that this compromise was a settlement of all the previous concerns between the parties, it results clearly from several articles of the instrument, that it was merely to put an end to some of the difficulties, which had arisen between them. After settling these difficulties, the agreement regulates the manner in which the accounts in relation to the shipments of cotton, the result of which was not yet known to the parties, were to be adjusted. Article 8, provides, that the 'plaintiffs are to be debited with their share in the extra charges and bank commissions paid to prevent the sacrifice of the cotton.' Article 7, 'that the defendants shall credit the plaintiffs with their (the defendants') share in the loss on the shipments on joint account;' and article 3, 'that the plaintiffs shall be allowed to verify the account of sales and other items in their details, but that the account shall in all cases be finally established agreeably to a model annexed to the agreement; and the model referred to contains to the credit of the plaintiffs, the defendants' share in the loss on the shipments. It only then remains to be enquired whether the loss on the returned bills of exchange is a part of the losses on the shipments, for which the defendants are liable in proportion to their interest in the joint operation. Of this, it appears to us, that there can hardly be a doubt. The bills of exchange having been drawn by the plaintiffs for the purchase of the cotton shipped on joint account, the loss consequent on the return of these bills must form an item, which for the purpose of ascertaining the result of the adventure, must be either deducted from the profits or added to the loss, as the case may be. The damages paid on these bills must be viewed as one of the charges of the shipments on joint account, as well as all the other expenses, such as freight, insurance, exchanges, interest, storage, &c. The exemption from the obligation to bear their share or proportion of these damages, which the defendants claim under the compromise, is not only unwarranted by the letter and spirit of that instrument, but would violate those principles of fairness and equa-

lity which should always obtain among partners, and would moreover be contrary to law. Civ. Code, art. 2785. In the language of the judge *a quo*, 'the strange anomaly might be exhibited of some of the partners making a profit by the same operation in which their co-partners incurred a loss.'

*Judgment affirmed.*